IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CASE NO. 3:22 CR 617 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **ARTISS HARRISON,** | |
| Defendant. | MEMORANDUM OPINION AND ORDER |

### INTRODUCTION

Currently pending before the Court are Defendant Artiss Harrison's Motion to Suppress and Request for Hearing (Doc. 12), and Motion for the Disclosure of the Government's Confidential Informant and to Compel Disclosure of Any Leniency or Cooperation Agreement of the Confidential Informant (Doc. 14). For the reasons discussed below, both motions are denied.

### BACKGROUND

In December 2021, Harrison was indicted on three counts of possession with intent to distribute a controlled substance and one count of possession of a firearm in furtherance of a drug trafficking crime. *See United States v. Harrison*, No. 21 CR 824 (N.D. Ohio). In May 2022, Harrison pleaded guilty to all counts of the indictment; he remained on bond pending sentencing. *See id.* (Non-document entry dated May 31, 2022).

According to the search warrant affidavit from Task Force Officer James Sutphin, in September 2022, a confidential source (CS) informed the Toledo Police Department ("TPD") that Harrison was selling drugs at 919 Alvison Rd., Toledo, Ohio. (Doc. 15-1, at 4). The CS had cooperated with TPD "since the summer of 2022" in consideration for leniency on a drug charge; the affidavit avers that information from the CS "has never proven to be false." *Id.* The CS

performed two controlled buys from Harrison on September 22 and 26, 2022. *Id.* at 5-6. These controlled buys were "surveilled, audio and video recorded, controlled funds were utilized and the source and source's vehicle were searched prior to the buy." *Id.* at 4. Prior to each controlled buy, the CS made a recorded telephone call in which Harrison – whose voice was known to Sutphin based on the investigation – was heard. *Id.* at 5-6. During the first controlled buy, Sutphin observed the source speaking with Harrison inside 919 Alvison. *Id.* at 5. Each time, the drug purchased was identified as crack cocaine. *Id.* at 5-6.

On September 27, 2022, Magistrate Judge Darrell A. Clay signed a search warrant for the property at 919 Alvison; an attachment thereto described and depicted the property. *See* Doc. 15-1, at 1, 10. According to the Government, the following day, TPD executed the search warrant. Agents found and seized various items from inside the house, including blenders, scales with drug residue, packaging materials, a loaded firearm magazine, and baggies containing narcotics. They further searched the detached garage and found – in a single box – a firearm, two magazines, and a scale with drug residue.

Harrison was charged in the instant case with two counts of possession with intent to distribute a controlled substance, one count of possession of a firearm in furtherance of a drug trafficking crime, and one count of felon in possession of a firearm. (Doc. 10). He now seeks suppression of the evidence found during the search of 919 Alvison (Doc. 12), and the disclosure of information regarding the confidential source (Doc. 14).

## DISCUSSION

Motion to Suppress

Harrison contends the search warrant application was deficient and presents two arguments in favor of suppression. First, he contends the warrant and affidavit did not describe

the detached garage with particularity, and thus any evidence acquired therein should be suppressed. Second, he asserts the information from the CS lacked sufficient reliability to support probable cause. The Government responds that (1) Harrison has not demonstrated he has standing to challenge the search, and (2) even if he does have standing, his arguments fail. For the reasons discussed below, the Court denies Harrison's motion to suppress.

*Standing*

The Government first argues Harrison has not demonstrated he has standing to challenge the validity of the search of 919 Alvison and the motion should be denied on this basis alone. (Doc. 15 at 3-4).

In order to challenge a search under the Fourth Amendment, Harrison must demonstrate he had "an expectation of privacy in the place searched" and that "his expectation was reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998); *see also United States v. Pollard*, 215 F.3d 643, 647 (6th Cir. 2000). "A defendant must satisfy a two-pronged test to show a legitimate expectation of privacy: 1) he must manifest an actual, subjective expectation of privacy; and 2) that expectation is one that society is prepared to recognize as legitimate." *Pollard*, 215 F.3d at 647 (citations omitted).

Although the Government is correct that Harrison's opening brief does not address standing, in Reply Harrison (1) represents he resided at the property with his girlfriend for a year prior to his arrest; (2) correctly notes that the affidavit in support of the search warrant states that the confidential informant "advised Harrison lives at 919 Alvison, Toledo, Ohio with his girlfriend and two dogs" (Doc. 15-1, at 4); and (3) correctly notes that the Pretrial Services Criminal History Report in this case indicates he has lived at the Alvison address since September 2021. (Doc. 3).

3

Therefore, the Court declines to deny Harrison's motion on standing grounds.

*Particularity of Area to Be Searched*

Harrison contends the warrant affidavit's general statement regarding outbuildings "is not particular enough to describe the place to be searched and anything found in the detached garage should be suppressed." (Doc. 12, at 5). This is so, he asserts, because there is no specific description of the outbuildings, and there is no information in the warrant specifically identifying any outbuilding as a location of illegal activity.

The Fourth Amendment to the Constitution states: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The chief purpose of the particularity requirement [is] to prevent general searches by requiring a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime has been committed." *Baranski v. Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco & Firearms*, 452 F.3d 433, 441 (6th Cir. 2006).

"Generally, a warrant for the search of a specified residence or premises authorizes the search of auxiliary and outbuildings within the curtilage." *United States v. Biles*, 100 F. App'x 484, 491 (6th Cir. 2004) (internal quotations and citations omitted); *United States v. Campbell*, 256 F.3d 381 (6th Cir. 2001) (holding that "since all of the buildings at 8670 Jennings Drive were within the curtilage of the property, there was no need to demonstrate probable cause to search each building on the property"); *United States v. Alexander*, 761 F.2d 1294, 1300–02 (9th Cir. 1985) (holding that a warrant commanding search of "all buildings, outbuildings, garages,

4

yard areas, trash containers, storage areas and containers used in connection with or within the curtilage of said premises and buildings" could include every structure on a 40–acre ranch); *see also United States v. Paull*, 551 F.3d 516, 523 (6th Cir. 2009) ("Our law presumes . . . that 'a warrant for the search of a specified residence or premises authorizes the search of auxiliary and outbuildings within the curtilage.'") (quoting *United States v. Watkins*, 179 F.3d 489, 506 (6th Cir. 1999) (Boggs, J., concurring)); *id.* at 524 ("The weight of the authority is clear that when searching for small portable items such as drugs and records, there is no need to provide separate probable cause or identification of auxiliary structures.") (quoting *Watkins*, 179 F.3d at 506); Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 4.10(a) (6th ed. 2022) (Ordinarily, "if the place to be searched is identified by street number, the search is not limited to the dwelling house, but may also extend to the garage and other structures deemed to be within the curtilage[.]").

For Fourth Amendment purposes, the Supreme Court considers curtilage to be the area "immediately surrounding" and associated with the home, and therefore a "treated as the home itself," warranting a legitimate expectation of privacy. *United States v. Dunn*, 480 U.S. 294, 300, (1987). To determine whether a particular area is within the curtilage, the Court considers: "(1) the proximity of the area claimed to be curtilage to the home, (2) whether the area is included within an enclosure surrounding the home, (3) the nature of the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observation by people passing by." *Id.*

The warrant in this case described the property to be searched as follows:

> The premises to be searched, 919 Alvison, Toledo, Ohio[,] is further described as a two story single family residence, with brick on the lower front, yellow siding on the second story, script writing of "nine nineteen" in black letters on the front porch and located in Toledo, Ohio.

5

(Doc. 15-1, at 10). Immediately thereafter is a photograph of the home, behind which can be seen a small portion of a detached garage with a vehicle parked in front in a driveway. *See id.* Below the photograph, the search warrant expressly states: "Additionally, specific authority is granted to search any outbuildings and/or vehicles . . . located on the property or curtilage." *Id.* Moreover, the affidavit in support of the search warrant stated that based on his training and experience, Sutphin was familiar with "the methods, schemes, and operations used by individuals involved the trafficking of narcotics", including that:

> it is common for large scale drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions, drug sources, and drug customers, in secure locations within their residences, garages, storage units, and safety deposit boxes for ready access, and to conceal such items from law enforcement authorities.

(Doc. 15-1, at 6-7).

Although Harrison contends the warrant did not designate "if the outbuildings are located in the curtilage of the home or if it is not in the curtilage", he does not expressly argue that the detached garage was not within the curtilage of the home. And the warrant itself *does*, as quoted above, identify only outbuildings "located on the property or curtilage" (Doc. 15-1, at 10).

Based on the above, the Court therefore finds the search warrant encompassed the detached garage; probable cause supported the issuance of the warrant, as discussed below; and no Fourth Amendment violation resulted from the search.

*Reliability of Information From CS / Probable Cause*

Harrison also attacks whether sufficient probable cause supported issuance of the warrant by challenging the reliability of information from the unidentified CS. He contends there is no information provided regarding whether the CS had worked with police before or provided reliable information before, and that said source had only worked with police for a short period

6

of time. The information provided by the CS, he therefore argues, is not sufficiently reliable to support a probable cause determination. The Court agrees with the Government that the affidavit provided probable cause for issuance of the warrant.

"[When] an affidavit is the basis for a probable cause determination, that affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). In such a case, review of the sufficiency of the evidence supporting probable cause, "is limited to the information presented in the four corners of the affidavit." *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). A court must look to the "totality of the circumstances," including a confidential informant's "veracity, reliability, and basis of knowledge," in order to answer "the commonsense, practical question" of whether an affidavit is sufficient to support a finding of probable cause. *Illinois v. Gates*, 462 U.S. 213, 230 (1983) (quotation marks omitted). Probable cause means "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238.

A court reviewing an issuing Magistrate Judge's determination is to pay "great deference" to the Magistrate Judge's finding of probable cause, and should uphold a warrant so long as the Magistrate Judge had a "substantial basis for . . . concluding that a search would uncover evidence of wrongdoing." *United States v. Leake*, 998 F.2d 1359, 1363 (6th Cir. 1992) (internal quotations and citations omitted).

Although Harrison challenges reliance on a CS, this is not a case where the warrant was issued solely on the basis of information from a CS. Rather, probable cause for issuance of the warrant is based upon the controlled buys performed by the CS with surrounding circumstances witnessed and confirmed by TFO Sutfin. That makes this case like *United States v. Adkins*, 429 F. App'x 471, 479 (6th Cir. 2011) and others. In *Adkins*, the Sixth Circuit explained:

7

> We have found that an affidavit contained sufficient corroborating information when "the details of the controlled purchase, and its connection to [the place to be searched], were spelled out in the affidavit." *Id.* at 894. An affidavit in which the affiant "described the controlled purchase that [the affiant] organized to corroborate the informant's information ... [which] was controlled and witnessed by [the affiant], who searched the [informant] for money or contraband, provided the [informant] with pre-recorded funds, observed the [informant] enter and exit defendant's house, and then observed and tested the [contraband] the [informant] purchased from defendant," *id.*, included sufficient corroborating information to support probable cause. Similarly, this Court has found that an affidavit that "contained [the affiant's] personal observation, his pat down of the informant before and after the purchase of the narcotics, and the fact that the drugs purchased by the confidential informant were later tested positive for [contraband]," *United States v. Pinson,* 321 F.3d 558, 563 (6th Cir. 2003), stated sufficient facts from which a magistrate judge could determine that probable cause existed.

429 F. App'x at 479. These facts are parallel to what occurred in this case. *See* Doc. 15-1, at 4-6. In *Adkins* itself, the affidavit "did not discuss the informant's reliability", but "detailed the agent's first-hand observation of a controlled buy linked to both Defendant and Defendant's residence" including monitored recorded phone calls, and field testing of narcotics following the controlled buy. *Id.* at 480-81.

The Court therefore finds that the affidavit provided in support of the search warrant provided a substantial basis for concluding probable cause existed. As such, Harrison's motion to suppress is denied.[1]

*Request for Hearing*

Harrison's motion to suppress requests a hearing in the heading, *see* Doc. 12, at 1, but he presents no specific argument regarding an evidentiary hearing, and he further acknowledges in Reply that in determining whether an affidavit supports probable cause for issuance of a search warrant, the Court is limited to the four corners of the affidavit (Doc. 17, at 5). *See United States*

---

1. In conjunction with his Reply, Harrison moves to strike Exhibits B and C to the Government's Opposition brief. (Doc. 17, at 5). Because the Court finds it unnecessary to consult either exhibit to resolve the pending motion, Harrison's motion to strike is denied as moot.

8

*v. Brown*, 828 F.3d 375, 381 (6th Cir. 2006). He further identifies no intentional or reckless disregard for the truth within the warrant affidavit to merit a *Franks* hearing. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978). As such, to the extent Harrison requests an evidentiary hearing, that request is denied.

Motion to Identify Confidential Informant

Harrison also moves for disclosure of information regarding the CS. (Doc. 14). He specifically requests disclosure of (1) the CS's identity; (2) the number of cases in which the CS has testified; (3) the length and nature of the CS's cooperation with police; (4) any agreements regarding immunity or leniency; (5) any money paid to the CS for work in this case; (6) any recordings of transactions or interactions referenced in the search warrant; and (7) all criminal charges and convictions of any confidential informants in this case. *Id.* at 2. He argues this information "is paramount to Defendant's right to a fair trial" because "[t]he entire reason" for the charges against him is based on the CS "coming to the police and stating that he had information on Defendant and alleged drug dealing" and then performing recorded controlled buys. (Doc. 14, at 5). Therefore, he contends, "[t]he involvement of the [confidential source] in this case is so central to the charges going forward that the disclosure of the [c]onfidential informant is necessary for Defendant to have a fair trial." *Id.* The Government responds that Harrison (1) does not have a due process right to disclosure of a confidential informant at this stage of the proceedings; and (2) has not met his burden to establish disclosure is required.

The Government has a "limited privilege 'to withhold from disclosure the identity of'" confidential informants. *United States v. Ray*, 803 F.3d 244, 273 (6th Cir. 2015) (quoting *Roviaro v. United States*, 353 U.S. 53, 59 (1957)). "To determine whether an informer's identity should be disclosed, *Roviaro* requires balancing 'the public interest in protecting the flow of

information' against an 'individual's right to prepare his defense.'" *Id.* (quoting *Roviaro*, 353 U.S. at 62). This privilege is subject to "the fundamental requirements of fairness," requiring disclosure only if "an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused or is essential to a fair determination of a cause." *Roviaro*, 353 U.S. at 60-61.

To compel disclosure, the "defendant must provide some evidence that disclosure of the informant's identity would assist in his defense." *Ray*, 803 F.3d at 274 (citing *Roviaro*, 353 U.S. at 62); *see also United States v. Doxey*, 833 F.3d 692, 707 (6th Cir. 2016) (defendant must "demonstrate how disclosure of information about the CI would 'substantively assist his defense' or that disclosure is "'essential to a fair trial'") (quoting *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992); *United States v. Sales*, 247 F. App'x 730, 734 (6th Cir. 2007)). Disclosure is not warranted when the possible relevancy of an informant's identity is based on "mere conjecture or supposition." *Doxey*, 833 F.3d at 707 (internal citation and quotation omitted).

Harrison has failed to demonstrate how disclosure of the CS's identity (or the other information requested) would materially assist his defense, or that disclosure is essential to a fair trial to overcome the informer's privilege. *See Moore*, 954 F.2d at 381; *United States v. Hammons*, 411 F. App'x 837, 843 (6th Cir. 2011) ("defendant bears the burden of showing how disclosure of an informant's identity will materially aid his defense"). Instead, he conclusorily asserts that because this case originated with information from the CS, the source's identity is central and disclosure necessary. But, as the Government points out, Harrison is not charged with the possession or sale of narcotics involved in the controlled buys conducted by the CS. And the Sixth Circuit rejected a similar argument under similar circumstances in *Ray*:

> The district court was within its discretion to allow the Government to withhold the identity of its CI. In Ray's motion, he failed to demonstrate how disclosure of

10

information about the CI would "substantively assist his defense" or that disclosure was "essential to a fair trial." *Moore*, 954 F.2d at 381; *United States v. Sales*, 247 F. App'x 730, 734 (6th Cir. 2007). Instead, he merely argued that the CI "was the person that formed the facts for the issuance of the search warrant," and so "[i]n order to present any viable defense," the requested information was necessary. . . . Further, on appeal, Ray has not demonstrated to this Court how disclosure would have assisted him at trial; he only asserts that the CI could have testified at trial about the details of the alleged purchase during the controlled buy, even though Ray was never charged for that alleged sale.

The only record evidence of the role played by the CI in this case is that the CI supplied the information to law enforcement that ultimately led to a fruitful search. *See Beals*, 698 F.3d 248, 270 (6th Cir. 2012) (holding that the district court was within its discretion not to order disclosure of the government's confidential informant where the informant only "helped orchestrate the search that led to discovery of incriminating evidence, not the crimes themselves," and "could not testify to any relevant fact."). Similar to *Beals*, in this case, Ray was not charged with any crimes related to the controlled buy, thus the CI was not involved in, and could not testify about, the crimes for which Ray was charged and could not have provided testimony to any fact relevant to those charges.

803 F.3d at 274 (internal record citation omitted). This same rationale applies here. Moreover, having opted not to file a reply brief, Harrison offers no further explanation in support of his position. As in the above-cited caselaw, Harrison's conclusory argument is insufficient to warrant disclosure of the confidential informant's identity or other requested information. Therefore, the Court denies Harrison's motion.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Harrison's Motion to Suppress (Doc. 12) be, and the same hereby is, DENIED; and it is

FURTHER ORDERED that Harrison's Motion to Strike Exhibits B and C to the Government's Opposition (Doc. 17, at 5) be, and the same hereby is, DENIED AS MOOT; and it is

FURTHER ORDERED that Harrison's Motion for the Disclosure of the Government's Confidential Informant and to Compel Disclosure of Any Leniency or Cooperation Agreement of the Confidential Informant (Doc. 14), be and the same hereby is, DENIED.

                                                    s/ *James R. Knepp II*
                                                    UNITED STATES DISTRICT JUDGE